## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. _____

PAUL PARSHALL, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs,

v.

THE SPECTRANETICS CORPORATION,
R. JOHN FLETCHER,
SCOTT DRAKE,
B. KRISTINE JOHNSON,
WILLIAM C. JENNINGS,
DANIEL PELAK,
JOSEPH M. RUGGIO,
MARIA SAINZ,
TODD SCHERMERHORN,
PHILIPS HOLDING USA INC., AND
HEALTHTECH MERGER SUB, INC.,

        Defendants.

---

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

---

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.    This action stems from a proposed transaction announced on June 27, 2017 (the "Proposed Transaction"), pursuant to which The Spectranetics Corporation ("Spectranetics" or the "Company") will be acquired by Philips Holding USA Inc. ("Parent") and its wholly-owned subsidiary, HealthTech Merger Sub, Inc. ("Merger Sub," and together with Parent, "Philips").

2. On June 27, 2017, Spectranetics' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Philips commenced a tender offer (the "Tender Offer") to acquire all of Spectranetics' outstanding common stock for $38.50 per share in cash. The Tender Offer is currently set expire on August 9, 2017. If a majority of the Company's stockholders tender their shares into the Tender Offer and the Tender Offer is successfully completed, Merger Sub will merge with and into Spectranetics (the "Merger"), with Spectranetics continuing as the surviving corporation and a wholly owned direct subsidiary of Parent.

3. On July 12, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Spectranetics common stock.

9. Defendant Spectranetics is a Delaware corporation and maintains its principal executive offices at 9965 Federal Drive, Colorado Springs, Colorado 80921. Spectranetics' common stock is traded on the NasdaqGS under the ticker symbol "SPNC."

10. Defendant R. John Fletcher ("Fletcher") has served as a director of Spectranetics since March 2002, and was appointed Chairman of the Board in December 2010.

11. Defendant Scott Drake ("Drake") has served as a director, President, and Chief Execute Officer ("CEO") of Spectranetics since 2011.

12. Defendant B. Kristine Johnson ("Johnson") is a director of Spectranetics.

13. Defendant William C. Jennings ("Jennings") is a director of Spectranetics.

14. Defendant Daniel Pelak ("Pelak") is a director of Spectranetics.

15. Defendant Joseph M. Ruggio ("Ruggio") is a director of Spectranetics.

16. Defendant Marie Sainz ("Sainz") is a director of Spectranetics.

17. Defendant Todd Schermerhorn ("Schermerhorn") is a director of Spectranetics.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of

Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Spectranetics (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of June 26, 2017, there were approximately 43,848,089 shares of Spectranetics common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Spectranetics develops, manufactures, markets, and distributes medical devices used in minimally invasive procedures within the cardiovascular system. The Company's products are available in over 65 countries and are used to treat arterial blockages in the heart and legs and in the removal of pacemaker and defibrillator leads. Its products and services are divided into three categories: Vascular Intervention; Lead Management; and laser, service, and other.

29. The Company's Vascular Intervention products include a range of laser catheters for ablation of blockages in arteries above and below the knee, the AngioSculpt scoring balloon used in both peripheral and coronary procedures, and the Stellarex drug-coated balloon peripheral angioplasty platform, which received European CE mark approval in December 2014.

30. The Lead Management product line includes excimer laser sheaths, dilator sheaths, mechanical sheaths and accessories for the removal of pacemaker and defibrillator cardiac leads, including the Bridge™ Occlusion Balloon.

31. Spectranetics' proprietary excimer laser system, the CVX-300®, is the only laser system approved in the United States, Europe, Japan, China and select other major global markets for use in multiple minimally invasive cardiovascular procedures. The Company sells, rents, and services its CVX-300 laser systems.

32. For the years ended December 31, 2016, 2015, and 2014, the Company's disposable products generated 94%, 94% and 90%, respectively, of its consolidated revenue, of which Vascular Intervention accounted for 67%, 66% and 58%, respectively, and Lead Management

accounted for 27%, 28%, and 32%, respectively. The remainder of the Company's revenue is derived from sales and rental of its laser systems and related services.

33. Spectranetics has performed very well recently. On April 27, 2017, the Company issued a press release announcing its financial results for the three months ended March 31, 2017. There, the Company reported the following highlights, compared its results the previous year:

- Revenue of $69.7 million increased 11%
- Vascular Intervention revenue of $46.4 million increased 11%
- Lead Management revenue of $19.0 million increased 11%

34. The Company also reported that, for its full year 2017 financial outlook, revenue is projected to be within a range of $293 million to $306 million, an increase of 8% to 13% over 2016, and gross margin is projected to be within the range of 73.8% to 74.4% of sales.

35. With respect to these impressive results, Spectranetics' President and CEO, Individual Defendant Drake, stated:

> Q1 was another strong quarter for Spectranetics, evidenced by double-digit revenue growth in both of our business units. . . . We are driving growth globally in our effort to improve patients' lives. In addition to the solid top-line performance, we continue to make progress on our innovation pipeline and are focused on the opportunities that lie ahead.

36. Despite the Company's strong standalone growth prospects, the Board caused the Company to enter into the Merger Agreement on June 27, 2017, pursuant to which Spectranetics will be acquired by Philips.

37. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or

6

have submitted unsolicited alternative proposals.

38. Further, the Company must promptly advise Philips of any proposals or inquiries received from other parties. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Philips a "matching right" with respect to any "Superior Proposal" made to the Company.

39. Further locking up control of the Company in favor of Philips, the Merger Agreement provides for a "termination fee" of $7.7 million, payable by the Company to Philips if the Individual Defendants cause the Company to terminate the Merger Agreement.

40. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

41. The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

42. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43. Further, the merger consideration fails to adequately compensate the Company's stockholders for the significant synergies resulting from the merger.

44. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

45. Defendants filed the Solicitation Statement with the SEC in connection with the

Proposed Transaction.

46. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

47. First, the Solicitation Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its so-called fairness opinion.

48. With respect to Spectranetics' financial projections, the Solicitation Statement fails to disclose the following financial projections for years 2017 through 2031 for each of Spectranetics' Management Case 1, Management Case 2, and Management Case 3 sets of projections: (i) unlevered free cash flows; (ii) income taxes; (iii) stock-based compensation; and a reconciliation of all non-GAAP measures to GAAP metrics.

49. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the projected unlevered free cash flows for the Company as used by J.P. Morgan in the analysis and all of the constituent line items used to calculate unlevered free cash flow, including income taxes and stock-based compensation; (ii) the terminal value of the Company; and (iii) the inputs and assumptions underlying J.P. Morgan's calculation of weighted average cost of capital to derive the range of discount rates used by J.P. Morgan.

50. With respect to J.P. Morgan's Public Trading Multiples, the Solicitation Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by J.P. Morgan in its analysis.

51. With respect to J.P. Morgan's Selected Transaction Analysis, the Solicitation Statement fails to disclose the individual multiples for each of the transactions observed by J.P. Morgan in its analysis.

52. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

53. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) "Financial Analyses and Opinion;" and (ii) "Certain Spectranetics Forecasts."

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Spectranetics' stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

57. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

58. The Solicitation Statement was prepared, reviewed, and/or disseminated by

9

defendants.

59.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

60.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

61.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

62.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

63.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

64.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

65.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

66.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

10

68. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

69. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

70. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

71. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

72. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Philips)**

73. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74. The Individual Defendants and Philips acted as controlling persons of Spectranetics

11

within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Spectranetics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

75. Each of the Individual Defendants and Philips was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

76. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

77. Philips also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

78. By virtue of the foregoing, the Individual Defendants and Philips violated Section 20(a) of the 1934 Act.

79. As set forth above, the Individual Defendants and Philips had the ability to exercise

control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

80. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

81. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 21, 2017                    **JEFFREY M. VILLANUEVA, P.C.**

                                        By:  *s/Jeffrey M. Villanueva*
                                             Jeffrey M. Villanueva
**OF COUNSEL:**                              1755 Blake Street, Suite 225
                                             Denver, Colorado 80202
**RIGRODSKY & LONG, P.A.**                   (303) 295-7525
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310                               *Attorneys for Plaintiff*

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

14